li CARAWAY, Judge.
Kathy Ann Peek Palmer Worley was awarded by the trial court legal interest on her share of certain mineral revenues calculated from the time of receipt of those funds by her former husband, Richard Warren Palmer, during the pendency of this partition proceeding. Mr. Palmer appeals, alleging that legal interest on the funds is due only from the date of judgment. We affirm.

Factual and Procedural History

The Louisiana community property regime that existed between Kathy Peek Palmer Worley (“Ms. Palmer”) and Richard Warren Palmer (“Mr. Palmer”) was dissolved on August 10, 1988 by legal separation. On January 6, 1989, Ms. Palmer filed a Petition for Partition of Community Property. An amended petition was filed on July 20, 1989 in which Ms. Palmer filed a detailed descriptive list and requested that the court order Mr. Palmer to do the same. Mr. Palmer filed a descriptive list on August 23, 1989. Among the items on the list were mineral interests in the state of Mississippi listed as the separate property of Mr. Palmer.
In August, 1990, Mr. Palmer filed a declaratory judgment action in Mississippi regarding the separate property status of the Mississippi property holdings which were acquired during the marriage in his name. While the action was pending, the parties reached a partial settlement in this Louisiana proceeding for the partition of most of their community assets. Expressly excluded from the settlement was the Mississippi mineral interests which the parties agreed would be owned in accordance with the final ruling in the Mississippi declaratory judgment action. In the settlement agreement, Mr. Palmer paid Ms. Palmer for his possession and expenditures of certain community funds since the termination of the community. However, the settlement expressly provided that it did not include |2any additional ac-countings which might be due by Mr. Palmer for the Mississippi mineral interests.
Reversing both the trial court and intermediate appellate court, the Mississippi Supreme Court held on February 9, 1995 that the disputed mineral interests were jointly owned by Mr. and Ms. Palmer. Pursuant to the judgment and in accordance with the prior settlement agreement, the appropriate assignments of the mineral interests were made to Ms. Palmer for her one-half interest in the disputed property and Ms. Palmer thereafter began directly receiving royalties or other payments.
Ms. Palmer then filed, in this partition action, a rule for an accounting of all sums due her and arising from her co-ownership of the Mississippi mineral interests and legal interest on all sums due her as provided by law. The parties subsequently agreed by stipulation that the net revenues derived from the Mississippi property from the date of termination of the community through January 31, 1995 totaled $453,411.00. As a result of the agreement, Mr. Palmer had paid Ms. Palmer $226,705.50, which is one-half the net revenues derived from the Mississippi properties from the date of the termination of the community regime through January 31, 1995. Based on those stipulations, the parties presented to the trial court only the *1228 issue of when legal interest on the mineral revenues received by Mr. Palmer would accrue.
The sole issue presented in this appeal is whether the trial court erred in finding that Ms. Palmer is entitled to interest on the sums received by her former husband during the pendency of this partition proceeding, from the time of the receipt of each payment by Mr. Palmer until his payment to Ms. Palmer in 1995 of her share. Likewise, as to certain accrued revenues received after the termination |3of the community and prior to this suit, Mr. Palmer disputes the award of interest on those revenues from the date of judicial demand.

Discussion

Mr. Palmer argues that the provisions governing co-ownership apply to the property in question citing La.Civil Code arts. 2369.1 and 480. Under these provisions, it is asserted that Mr. Palmer, as a co-owner of the property, was entitled to use the co-owned revenues, imthout the payment of rent to the other co-owner, Ms. Palmer. Therefore, because “interest” is “rent” on money, Mr. Palmer asserts he owes no interest on the co-owned sums he received.
The underlying disputed assets of this partition action were the Mississippi mineral interests which the parties agreed in their partial settlement to divide based on the outcome of the Mississippi declaratory judgment action.[1] From the underlying assets, the royalties or other mineral revenues which Mr. Palmer received were the “products” derived from those mineral interests as that term is defined in La. C.C. art. 488. Under La. C.C. art. 798, the products of the mineral interests are shared by the co-owners in proportion to their ownership.[2] Under the second paragraph of that article, a co-owner who produces the product must account to the other co-owner after the costs of the product are deducted. In view of Ms. Palmer’s demands in this action, Mr. Palmer, as the single recipient of the mineral revenues, owed the obligation to account to his co-owner upon his receipt of each monthly accrual.
LMr. Palmer’s argument that he could “use” Ms. Palmer’s share of the products of the co-owned property during the pendency of this action is misplaced. On the one hand, “use” of revenues or money as that concept is considered under La. C.C. aart. 536 [3] would mean that Mr. Palmer could expend or consume Ms. Palmer’s share of the revenues. Given Mr. Palmer’s duty to account for products under Article 798 and his further duties under Civil Code articles 799 and 800 to preserve co-owned property, Mr. Palmer’s use of Ms. Palmer’s mineral revenues as a consumable fund would be clearly a breach of these duties. On the other hand, if the “use” for which Mr. Palmer argues concerns the investment of Ms. Palmer’s share of revenues, any interest earned on such investment would be a civil fruit for which the obligation to Ms. Palmer under Article 798 would also apply. See La. C.C. art. 551.
The issue of interest which these mineral revenues could have earned is properly viewed as Ms. Palmer’s damages under La. C.C. art. 2000[4] for the delay which she suffered for Mr. Palmer’s refusal to recognize her ownership in the mineral interests and to pay her for the revenues derived therefrom. *1229 The critical fact is that Mr. Palmer received the co-owned revenues or “products” during the pendency of an action in which he ultimately did not prevail. Although he may not have been obligated to employ the revenues to earn interest and there being no evidence presented at the trial of the rule to show that he did, in fact, earn interest, Ms. Palmer was damaged. Upon Mr. Palmer’s receipt of the revenues, the co-owned product came into existence in the form of money, which by its unique Rnature[5] allows for the immediate and separate use by co-owners. Mr. Palmer’s action in this suit prevented the other co-owner’s use of money in violation of the principles reflected in La. C.C. arts. 798 and 802 for which damages in the form of legal interest may be assessed.

Conclusion

For these reasons, the judgment of the trial court awarding legal interest on the mineral revenues received by Mr. Palmer is affirmed. Costs of this appeal are assessed to appellant.
AFFIRMED.

. Neither party has urged the application of Mississippi law for the resolution of this dispute. In the absence of proof of the foreign law and its application, we address this dispute under the Louisiana principles of co-ownership.

. La. C.C. art. 798 provides as follows:
“Co-owners share the fruits and products of the thing held in indivisión in proportion to their ownership.
When fruits or products are produced by a co-owner, other co-owners are entitled to their shares of the fruits or products after deduction of the costs of production."

. La. C.C. art. 536 provides, in pertinent part, that:
"Consumable things are those that cannot be used without being expended or consumed, ... such as money....”

. La. C.C. art. 2000 provides, in pertinent part, as follows:
"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924.”

. It is somewhat anomalous to view money as a partitionable, co-owned asset which would require the routine procedures for partition such as assessment of divisibility of the property or sale by licitation. If a co-owner receives money on behalf of himself and another co-owner, particularly as a fruit or product of a co-owned thing under La. C.C. art. 798, there arises an obligation to pay the co-owner's share of the money, an obligation which, upon the demand of the co-owner, gives rise to damages under La. C.C. art. 2000.